# Department of Labor Jurisdiction to Investigate Certain Criminal Matters

The Attorney General may not delegate his authority to investigate labor crimes to the Secretary of Labor unless the Department of Labor has specific overlapping statutory authority to investigate those same offenses.

Section 601(a) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 521(a), precludes the investigation of violations of § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, by the Department of Labor.

Section 805(b) of the Comprehensive Crime Control Act of 1984, 29 U.S.C. § 1136, did not alter the limitations on Department of Labor investigatory authority set forth in § 601(a) of the LMRDA.

October 28, 1986

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL,
CRIMINAL DIVISION

This memorandum responds to questions posed by the Criminal Division regarding the investigative jurisdiction of the Department of Labor over certain criminal matters. In response to a prior request from the Criminal Division, this Office recently opined that § 805(b) of the Comprehensive Crime Control Act of 1984, 29 U.S.C. § 1136, granted investigative jurisdiction to the Department of Labor over offenses related to pension funds and welfare benefit plans. Memorandum for Stephen S. Trott, Assistant Attorney General, Criminal Division from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel (Aug. 29, 1986).

In a follow-up memorandum expanding the original request, the Criminal Division posed three additional questions that we address separately in this memorandum. We understand that these questions have arisen during the process of negotiating a Memorandum of Understanding (MOU) between this Department and the Department of Labor identifying their respective investigative and prosecutorial responsibilities. First, you have asked for our views on the general limits, if any, that apply to the power of the Attorney General to delegate his investigative authority to other agencies through an MOU or other means. The second issue you have asked us to address is whether the Labor Department's investigative authority under § 601(a) of the Labor Management Reporting and Disclosure Act (LMRDA) of 1959, 29 U.S.C. § 521(a), excludes investigations of violations of § 302 of the Labor Management Relations (Taft-Hartley) Act of 1947, 29 U.S.C. § 186, and certain other offenses. Third, you

have inquired whether any limitation imposed by § 601(a) of the LMRDA was modified by § 805(b) of the Comprehensive Crime Control Act of 1984.

With respect to your inquiry concerning the general limitations on delegation of investigative power by the Attorney General, this Office has consistently taken the position that the Attorney General may not delegate criminal investigative authority to outside agencies in the absence of specific statutory authority. We are not aware of any specific authority that would alter that conclusion in the present case. Therefore, we believe that the Attorney General may not delegate his authority to investigate labor offenses unless the Department of Labor has specific overlapping statutory authority to investigate those same offenses.

On the second question regarding the construction of § 601(a) of the LMRDA, your Division has taken the position that this provision precludes the investigation of § 302 offenses by the Department of Labor. Although § 302 is somewhat cryptic, we agree with your interpretation.

Finally, we do not believe that the limitation imposed on the Department of Labor by § 601(a) of the LMRDA was altered by § 805(b) of the Comprehensive Crime Control Act of 1984. Section 302 of the Taft-Hartley Act is not related to the operation of pension funds or welfare benefit plans. Therefore, under the analysis in our prior memorandum, § 805(b) did not alter the limitation contained in section 601(a).

## I. Background

Because these issues have arisen during MOU negotiations between this Department and the Department of Labor, we believe it is important to explain the role of prior agreements between these two departments governing the division of investigative responsibility over certain labor offenses.

Investigations into criminal matters relating to labor-management relations have been governed by a 1960 memorandum of understanding.[1] The 1960 MOU directed that cases investigated by the Department of Labor would be referred to the Criminal Division, and that all criminal prosecutions (as well as civil actions in the name of the Secretary of Labor) would be conducted by this Department. The MOU, however, made the division of investigative responsibility "subject to specific arrangements agreed upon by the Department of Justice and the Department of Labor on a case-by-case basis." For example, the MOU provided that this Department would investigate offenses under § 505 of the LMRDA, 29 U.S.C. § 186 (amending § 302 of the Taft-Hartley Act), but the MOU suggested that investigation of such matters could be delegated to the Department of Labor on a case-by-case basis.

[1] 25 Fed. Reg. 1708 (1960). A second MOU executed in 1975 divides responsibility for the investigation of certain ERISA offenses between the two departments. Memorandum of Understanding Between the Departments of Justice and Labor Relating to the Investigation and Prosecution of Crimes and Related Matters under Title I of the Employee Retirement Income Security Act of 1974 (Feb. 9, 1975). *See generally* Memorandum to Stephen S. Trott, Assistant Attorney General, Criminal Division from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel (Dec. 23, 1983).

As noted above, the Department of Labor and this Department are currently working on a new memorandum of understanding on this subject.[2] The MOU now being drafted can, of course, change or modify any agreement reached in the prior MOUs, so long as the provisions of the new MOU are consistent with legal constraints.[3] We now turn to the three specific legal issues that you have raised.

## II. The Attorney General May Not Delegate Investigative Jurisdiction to Other Agencies Without Statutory Authority

You have asked whether there are limits on the Attorney General's authority to delegate his investigative powers either generally or on a case-by-case basis. This Department's general authority to undertake criminal investigations is conferred by 28 U.S.C. § 533, which provides that the Attorney General "may appoint officials . . . to detect and prosecute crimes against the United States."[4] In interpreting § 533, this Office has repeatedly recognized that this provision authorizes the Department of Justice to investigate all federal criminal viola-tions, unless a particular statute specifically assigns exclusive investigative responsibility to another agency.

This Office has also consistently concluded that "[i]n the absence of any general provision of law permitting an agency to transfer its statutory authority to another agency, such transfers or delegations may normally be accomplished only by legislation or by executive reorganization under the Reorganization Act." "Litigation Authority of the Office of Federal Inspector, Alaska Natural Gas Transportation System," 4B Op. O.L.C. 820, 823 (1980). This principle, in our judgment, compels the conclusion that the Attorney General may not delegate this Department's investigative responsibility to another agency, just as he may not delegate this Department's litigating authority to another agency, unless specific legislation grants him this power.[5] In the present instance, we are not aware of any statute authorizing the delegation of Justice Department investigative authority to the Labor Department.[6]

---

[2] We understand that the two departments have recently signed a new MOU that deals with cooperation and the provision of information but does not deal with issues of jurisdiction.

[3] Our analyses of the respective authorities of the Department of Labor and this Department are not meant to confer any rights on defendants. *See In re Application to Quash Grand Jury Subpoena Served Upon Local 806*, 384 F. Supp. 1304, 1306 (E.D.N.Y. 1974) (1960 MOU between Departments of Labor and Justice is not for the benefit of defendants).

[4] Pursuant to this authority, the Attorney General may delegate his statutory authority to persons within the Department of Justice.

[5] *See, e.g.*, 21 U.S.C. § 873(b). *See also* Memorandum for Stephen S. Trott, Assistant Attorney General, Criminal Division from Ralph W. Tarr, Acting Assistant Attorney General, Office of Legal Counsel (Nov. 8, 1985); Memorandum for Mark Richard, Deputy Assistant Attorney General, Criminal Division from Larry L. Simms, Deputy Assistant Attorney General, Office of Legal Counsel (Mar. 12, 1984).

[6] Although the Attorney General may not delegate enforcement authority to other agencies, he may in some instances appoint members of other federal agencies as deputy marshals to aid in the enforcement of federal law. The analytical distinction between delegation of authority and deputation lies in the direct control

Continued

Although we have not found any statute authorizing such a delegation, we see no reason why the Attorney General could not enter into an agreement providing for the Labor Department to exercise primary investigative responsibility in an area of overlapping jurisdiction. Such an agreement, however, would depend upon the existence of a statute granting relevant investigative jurisdiction to the Labor Department.

In this connection, we note that the Criminal Division has directed our attention to three sources of independent criminal investigative authority possessed by the Department of Labor. The first of these, § 805(b) of the Comprehensive Crime Control Act of 1984, was analyzed in our prior memorandum. Congress has also expressly granted the Labor Department investigative jurisdiction in § 504 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1134, and in § 601 of the LMRDA, 29 U.S.C. § 521. You have asked for our views on the nature of the limitation imposed by § 601(a) of the LMRDA on Labor Department investigations of possible violations of § 302 of the Taft-Hartley Act, and on the question whether that limitation was altered by § 805(b) of the Comprehensive Crime Control Act of 1984. We now turn to these issues.

### III. Section 601(a) of the LMRDA Does Not Authorize the Labor Department to Investigate Possible Violations of § 302 of the Taft-Hartley Act

As you note in your request, the original Taft-Hartley Act, which was enacted in 1947, did not assign any agency the responsibility for investigating violations of § 302. When Congress creates a crime but does not specifically assign investigative jurisdiction to any particular agency, the Attorney General has investigative jurisdiction under his general powers to "appoint officials . . . to detect and prosecute crimes against the United States." 28 U.S.C. § 533.

In § 601(a) of the LMRDA, enacted in 1959, Congress gave the Secretary of Labor investigative authority with respect to any violation of the LMRDA "except title I [relating to the protection of union members' rights by private civil action] *or amendments made by this Act to other statutes.*" Pub. L. No. 86–257, § 601(a), 73 Stat. 519, 539 (1959) (emphasis added). Among the statutory provisions amended by the LMRDA was 29 U.S.C. § 186, the codifi-

---

[6] (. . . *continued*)

maintained by the Attorney General (through the marshal) when an individual is deputized. The Attorney General is authorized to direct a marshal to assign a deputy to perform any special national police duty that is within the marshal's jurisdiction, whether by express provision or necessary implication. *In re Neagle*, 135 U.S. 1, 65 (1890). *See also* 28 U S.C. §§ 562, 569(c), 28 C.F.R. § 0.111–12. Such deputations have been sharply restricted as an administrative matter by the Marshals Service, and numerous other legal considerations weigh against the use of this power to authorize agents of other agencies to enforce federal law. For example, special deputations might in some instances be viewed as directly contravening the intent of Congress by providing authority to make arrests and carry firearms to officers to whom Congress specifically had chosen not to grant those powers. *See, e.g.,* "Special Deputations of Private Citizens Providing Security to a Former Cabinet Member," 7 Op. O.L.C. 67 (1983).

cation of § 302 of the Taft-Hartley Act. *See* Pub. L. No. 86–257, § 505, 73 Stat. 519, 537 (1959). Thus, because Congress amended § 302 of the Taft-Hartley Act as part of the LMRDA, the language of § 601(a) clearly indicates that the Secretary of Labor does not have authority to investigate § 302 offenses.

The legislative history of § 601(a) does not contradict the plain meaning of the statutory language.[7] The bill passed by the House and sent to the conference committee directed the Secretary "to make an investigation" when he has probable cause to believe that any person has violated a provision of the act, other than title I." H.R. Rep. No. 741, 86th Cong., 1st Sess. 47 (1959) (report on H.R. 8342). The Senate bill rejected the probable cause requirement for investigations and made the investigative power permissive rather than mandatory. S. Rep. No. 187, 86th Cong., 1st Sess. 100 (1959) (report on S. 1555). Moreover, the Senate bill, unlike the House bill, excepted violations of the Taft-Hartley provisions from the Secretary of Labor's investigative authority. S. 1555, 86th Cong., 1st Sess. 21 (1959). The report of the Senate Labor Committee explained in clear terms that the bill excepted from the Secretary's investigative authority "amendments made in other statutes, such as the National Labor Relations Act [Taft-Hartley] or the Labor Management Relations Act, 1947." S. Rep. No. 187, *supra*, at 42.

The main dispute in the Conference Committee over the Secretary's investigative authority concerned the requirement of probable cause to investigate violations of the Act and the mandatory nature of the investigations in the House bill. *See* H.R. Conf. Rep. No. 1147, 86th Cong., 1st Sess. 36 (1959), *reprinted in* 1959 U.S.C.C.A.N. 2318, 2508. The Conference Committee report did not even mention the restriction on investigations of Taft-Hartley offenses. *Id.* Instead, the Conference Report merely noted that the Conference adopted the Senate version "except that the investigation authority is permissive rather than mandatory, no investigation may be made with respect to violations of rules and regulations, and the investigation authority does not extend to title I." H.R. Conf. Rep. No. 1147, *supra*, at 36. Nevertheless, the Conference Committee included the Senate bill's exception pertaining to statutes amended by the act in the version of the bill reported out of the committee. *See* 105 Cong. Rec. 18115 (1959) (bill as reported out of conference committee).

The Taft-Hartley exclusion was explained briefly by Senator Goldwater on the floor of the Senate prior to final passage. Senator Goldwater noted that § 601(a) authorizes the Secretary to investigate violations of any provision of the act excluding "amendments made to Taft-Hartley." 105 Cong. Rec. 19768

---

[7] The National Labor Relations Board (NLRB) collected the legislative history of the LMRDA in 1959, and the Department of Labor published a selected legislative history in 1964. National Labor Relations Board, *Legislative History of the Labor Management Reporting and Disclosure Act of 1959* (1959); Department of Labor, *Legislative History of the Labor Management Reporting and Disclosure Act of 1959* (1964). The Bureau of National Affairs (BNA) also published an annotated legislative history in 1959. Bureau of National Affairs, *The Labor Reform Law* (Labor Management Reporting and Disclosure Act of 1959) (1959). *See also* A. McAdams, *Power and Politics in Labor Legislation* (1964).

(1959). Accordingly, it appears that the only explanation offered in the legislative history supports the plain language of section 601(a).

The change makes sense when the history of the act is considered.[8] The LMRDA resulted in part from over two years of detailed hearings by the McClellan Commission on American labor union practices and labor management relations.[9] The primary aim of the LMRDA was to establish reporting provisions to regulate and democratize the operation of the unions. *See, e.g.*, S. Rep. No. 187, 86th Cong., 1st Sess. 2 (1959). One of the key issues in the drafting process was whether the bill should include amendments to the Taft-Hartley Act which would entail changes in substantive provisions governing labor-management relations or whether such amendments should be left for a subsequent legislative effort. The Senate debated this issue at great length, with a substantial number of Senators arguing that the substance of labor-management relations involved a distinct set of issues that should not be allowed to fracture the broad consensus concerning the need for additional procedural (*i.e.*, reporting) requirements. *See, e.g.*, 105 Cong. Rec. 6131–32, 6239–40, 6281, 6285–92, 6296–6301, 6389–93, 6395–6400, 6409–11 (1959) (debating amendment to delete provisions amending Taft-Hartley). In the end, the Senate decided to include a handful of key amendments to Taft-Hartley in its version of the bill.[10]

This history makes sense of § 601(a) which, in effect, provided the Secretary of Labor with investigative authority over the heart of the 1959 Act — the new reporting and disclosure provisions — but not over the distinct substantive provisions governing labor management relations, which were amendments to provisions of the Taft-Hartley Act. Thus, what may seem on first impression to be awkward phraseology — "amendments made by this Act to other statutes" — in fact clearly identifies the set of provisions that altered the Taft-Hartley Act.

In sum, the legislative history does not suggest that the final language of § 601(a) was intended to mean anything other than the plain language suggests.

One additional issue that must be considered is whether § 607 of the LMRDA, 29 U.S.C. § 1136(a), can be read to provide additional investigative jurisdiction to the Department of Labor or to any other department. Section 607 gives the Secretary of Labor the power to "make . . . arrangements or agreements for cooperation or mutual assistance in the performance of his functions under this Act and the functions of any such agency as he may find to be practicable and

---

[8] The BNA legislative history of the LMRDA, published in 1959, explains that the exception for the Taft-Hartley amendments stemmed from the fact that the National Labor Relations Board (NLRB) or the Justice Department administered that act. Bureau of National Affairs, *supra* note 7, at 104.

[9] *See, e.g.*, S. Rep. No. 187, 86th Cong., 1st Sess. (1959) (bill designed "to correct the abuses which have crept into labor and management and which have been the subject of investigation by the Committee on Improper Activities in the Labor and Management field for the past several years"), *reprinted in* 1959 U.S.C.C.A.N. 2318. The McClellan hearings focused on corrupt labor practices in a handful of unions, notably by the Teamsters and their president, Jimmy Hoffa. S. Rep. No. 1417, 85th Cong., 2d Sess., Interim Report of the Senate Select Committee on Improper Activities in the Labor or Management Field (1958); S. Rep. No. 1210, 85th Cong., 2d Sess. (1958).

[10] Much of the eventual substance of the Taft-Hartley amendments was adopted from the House version by the conference committee. *See* H.R. Conf. Rep. No. 1147, *supra*, at 46, 49–75.

consistent with law."[11] The section also provides that "each department, agency, or establishment of the United States is authorized and directed to cooperate with the Secretary and, to the extent permitted by law, to provide such information and facilities as he may request." Finally, the section specifically directs the Attorney General to receive evidence from the Secretary of Labor and to take appropriate action.

In our view, § 607 does not provide a basis for expanding Labor's statutory jurisdiction. That section authorizes the Secretary of Labor to enter into arrangements or agreements to assist "in the performance of his functions *under this Act* and *the functions of any such agency . . . consistent with law."* (Emphasis added.) We do not believe this language can be read to enlarge the scope of Labor's lawful functions. To be "consistent with law," the Secretary of Labor can exercise only that authority granted to him by statute. The 1960 MOU recognized that § 607 explicitly provided the Secretary of Labor with authority to make interagency agreements. In our view, the agreement reflected in the 1960 MOU did not necessarily eliminate permanently the investigative jurisdiction of the Labor Department in the areas assigned to this Department, but rather transferred that power to this Department based upon § 607 for as long as that agreement remains in effect.[12]

Thus, the 1960 MOU would not bar a different allocation of responsibility in a new MOU so long as the investigative jurisdiction falls within the investigative authority conferred by Congress in 1959 or since that time.

## IV. Section 805(b) of the Comprehensive Crime Control Act of 1984 Did Not Alter § 601(a) of the LMRDA

Finally, we address the question whether Labor's lack of authority to investigate violations of § 302 of the Taft-Hartley Act was subsequently altered by § 805(b) of the Comprehensive Crime Control Act of 1984. We have already opined that § 805(b) provided investigative jurisdiction only over offenses related to pension funds and welfare benefit plans, and § 302 of the Taft-

---

[11] Section 607 of the LMRDA, provides in pertinent part:

> In order to avoid unnecessary expense and duplication of functions among Government agencies, the Secretary may make such arrangements or agreements for cooperation or mutual assistance in the performance of his functions under this Act and the function of any such agency as he may find to be practicable and consistent with law. The Secretary may utilize the facilities or services of any department, agency, or establishment of the United States or of any State or political subdivision of a State, including the services of any of its employees, with the lawful consent of such department, agency, or establishment; and each department, agency, or establishment of the United States is authorized and directed to cooperate with the Secretary and, to the extent permitted by law, to provide such information and facilities as he may request for his assistance in the performance of his functions under this Act. The Attorney General or his representative shall receive from the Secretary for appropriate action such evidence developed in the performance of his functions under this Act as may be found to warrant consideration for criminal prosecution under the provisions of this Act or other Federal law.

29 U.S.C. § 1136(A)

[12] The 1960 MOU required "periodic reviews of this agreement to determine any adjustments which seem necessary based on experience under this Act." It is clear that the MOU envisioned the possibility of subsequent alteration in the division of authority recognized in the original agreement.

Hartley Act is not related to pension funds or welfare benefit plans. Therefore, § 805(b) did not, in our view, provide the Department of Labor with investigative jurisdiction over these offenses.

You have not suggested any other post-1959 statutory provision that might have expanded the investigative jurisdiction of the Department of Labor over § 302 offenses, and we have found no such provision in our independent research. In the absence of such a provision, it is our view that the Labor Department cannot investigate offenses under § 302.[13]

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[13] The 1960 MOU between the Labor Department and this Department describes § 302 of the Taft-Hartley Act, as amended by § 505 of the LMRDA of 1959, in the list of matters to be investigated by the FBI. As previously noted, the MOU provides that specific arrangements could be made on a case-by-case basis for investigation of § 302 violations by the Labor Department. You note that the Criminal Division held the view that such an agreement was acceptable based upon the belief that the Attorney General could delegate investigative authority over such offenses under 28 U.S.C. § 533. As explained above, we do not believe that the Attorney General can delegate such authority unless Congress has specifically given him power to make such a delegation or unless the agency to which that investigative authority would be delegated already has clear and express congressional authority to investigate those offenses.